UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. ORLY TAITZ, ESQ, PRO SE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 11-CV-00402-RCL |
|  | ) The Honorable Royce C. Lamberth |
| MICHAEL ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
|  | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Dr. Orly Taitz ( "Plaintiff") has sued Michael Astrue, Commissioner of the Social Security Administration ("SSA"), under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for information relating to individuals' social-security numbers. The SSA performed a thorough search that identified the majority of the requested documents, and even exceeded the requirements of FOIA by creating a document in response to one request.  Of the identified documents, the SSA withheld only the redacted Form SS-5[1] for a living social-security number holder.  The SSA properly withheld that Form SS-5 because disclosure of the document would implicate a substantial privacy interest and would serve no public interest.  Because the SSA has conducted an adequate search for records, and produced all responsive documents that are not exempt from release under FOIA, summary judgment should be granted in Defendant's favor.

---

[1] The Form SS-5 is the form through which an individual applies for a social-security card. *See, e.g.*, http://www.socialsecurity.gov/online/ss-5.html.

1

## BACKGROUND

On October 4, 2010, Plaintiff submitted a FOIA request to the SSA seeking records and posing questions relating to the social-security numbers of several individuals.  *See* Letter dated October 4, 2010, from Orly Taitz to Dawn Wiggins, FOIA Officer for SSA, ("FOIA Request") at Exhibit A.  Plaintiff requested the following items:

1. Blank Form SS-5's for the years 1958, 1959, 1976, and 1977 (FOIA Request at 2);

2. The redacted Form SS-5 for the living individual who holds the social-security number xxx-xx-4425.  In particular, Plaintiff sought the following information: the gender of the applicant; the zip code to which the original social-security card was mailed, and the date of application (FOIA Request at 3);

3. The Form SS-5 for the deceased individual Margaret Bossing (FOIA Request at 3);

4. The Form SS-5 for the deceased individual Antoinette Demo (FOIA Request at 4);

5. The Form SS-5 for the deceased individual Lillian Appelby (FOIA Request at 4);

6. Documents revealing the names of the persons who assisted Margaret Bossing, Antoinette Demo, and Lillian Appleby in applying for their social-security numbers, as well as the official who processed their Form SS-5s (FOIA Request at 4);

7. Records showing that Harry C. Ballentyne or another SSA employee made changes to records pertaining to social-security numbers xxx-xx-5154, xxx-xx-4425, xxx-xx-4426, or xxx-xx-4427 (FOIA Request at 5).

8. All of the dates on which the Form SS-5 was revised (FOIA Request at 2);

9. An explanation as to how "could Stanley Ann Dunham fill out in 1959 a [Form SS-5], that would not exist until 1965" (FOIA Request at 2); and

10. An explanation of other anomalies Plaintiff alleged to exist in the social-security records of Stanley Ann Dunham and Shirley Dunham (FOIA Request at 2).

On January 1, 2011, Plaintiff filed an administrative appeal.  *See* Letter dated January 1, 2011, from Orly Taitz to Dawn Wiggins, FOIA Officer for SSA, at Exhibit B.[2]

---

[2] In her administrative appeal, Plaintiff referenced other individuals' FOIA requests for different Form SS-5's.  *See* Exhibit B, at 2.  Those requests were not part of Plaintiff's original FOIA

The SSA responded to Plaintiff's FOIA request on March 2, 2011. *See* Letter dated March 2, 2011, from Dawn Wiggins, FOIA Officer for SSA to Orly Taitz, ("March Response") at Exhibit C. In its response, the SSA released to Plaintiff the Form SS-5's for the deceased individuals Margaret Bossing (item 3), Antoinette Demo (item 4), and Lillian Appleby (item 5). *See id.* at 1. The SSA also included a blank Form SS-5 for the year 1976 (item 1). *See id.* at 2. On June 27, 2011, the SSA released additional documents to Plaintiff. *See* Letter dated June 27, 2011, from Dawn Wiggins, FOIA Officer for SSA to Orly Taitz ("June Response") at Exhibit D. In that letter, the SSA released as a matter of discretion a list of revision dates for the Form SS-5 (item 8). *Id.* An SSA employee had created the list in response to Plaintiff's FOIA request. *Id.* The SSA also released another copy of Stanley Ann Dunham's Form SS-5, which shows a clearer revision date. *Id.*

The SSA did not locate responsive documents to some of the items requested by Plaintiff. As to item 1, the SSA was unable to locate blank copies of the Form SS-5 for the years 1958, 1959, or 1977. *See* March Response at 2. As to items 6 and 7, SSA does not maintain the names of persons who assist applicants in completing Form SS-5's or the names of employees who process the forms, nor does it maintain information regarding employees who make changes to records. *Id.* As to items 9 and 10, the SSA noted that those items constituted questions, not requests for documents, which FOIA does not require the SSA to answer. *Id.*

The SSA withheld under exemption 6 of FOIA the redacted Form SS-5 requested by Plaintiff in item 2. *Id.* The SSA explained that the Privacy Act of 1974, 5 U.S.C. § 552a, protects the personal information of social-security number holders. *Id.* The SSA only releases such information to the public with the social-security number holder's consent, or if FOIA

---

request, and are unrelated to this case. *See Williams v. Ashcroft*, 30 Fed. App'x 5, 6 (D.C. Cir. 2002) (an agency need not look for records not sought in the initial FOIA request).

requires disclosure.³ The social-security number holder did not provide consent in this case. *Id.* And, under exemption 6, FOIA does not require the release of records if disclosure would constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6). The SSA concluded that exemption 6 of FOIA applied because the requested information constituted personal information that could be used to help identify the social-security number holder, and because Plaintiff identified no public interest that would be served by disclosure. *Id.*

Plaintiff filed her complaint on February 16, 2011, and her amended complaint on April 8, 2011. She did not serve her complaint on the United States Attorney for the District of Columbia until April 21, 2011. Defendant filed an answer on May 23, 2011.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA actions are typically resolved on summary judgment. *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). In order to succeed in a motion for summary judgment in a FOIA case, the agency must demonstrate that it has conducted an adequate search and must justify any records withheld subject to FOIA's statutory exemptions. *Id.*

A court reviews an agency's response to a FOIA request de novo. *See* 5 U.S.C. § 552(a)(4)(B). Courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other

---

³ As explained further below, the SSA also sometimes releases such information if the social-security number holder is deceased. *See infra* 7 n.5.

documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

### I. THE SSA CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE DOCUMENTS.

As detailed in the Declaration of the Deputy Director of the Office of Privacy and Disclosure at the SSA, Dawn Wiggins, ("Wiggins Declaration") (attached at Exhibit E), the SSA conducted an adequate search for the requested documents. The SSA searched for blank Form SS-5's from the requested years and identified the Form SS-5's for the requested social-security numbers. Although it was not required by FOIA, the agency created a list of revision dates for the Form SS-5, and provided that list to Plaintiff. The remaining items requested by Plaintiff did not require an agency search.

In order to demonstrate that it has conducted an adequate search, an agency must explain the "scope and method of the search" in "reasonable detail[,]" but need not provide "meticulous documentation [of] the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). The agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

As to item 1 of Plaintiff's request, the SSA obtained the blank Form SS-5 for the year 1976, and searched for but was unable to obtain the blank Form SS-5's for the years 1958, 1959,

and 1977.  *See* Wiggins Declaration ¶ 5.  "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."  *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The SSA's inability to locate blank Form SS-5's for the years 1958 and 1959 is not surprising, because the SSA did not administer that form until 1975.  *See* Wiggins Declaration ¶ 5.  And after that date, the SSA's records do not contain a blank form for every year.  *Id.*  Ms. Wiggins's declaration describes an adequate search under the circumstances, and Plaintiff "fails to offer evidence of circumstances sufficient to overcome an adequate agency affidavit."  *Iturralde*, 315 F.3d at 315.

As to items 2 through 5 of Plaintiff's request, the SSA was able to obtain the Form SS-5's for all of the social-security numbers requested by Plaintiff.  The search for those documents was therefore adequate.[4]

As to items 6 and 7, the SSA did not conduct a search because it does not maintain records responsive to Plaintiff's request.  *See* Wiggins Declaration ¶ 9.  A search for records is unnecessary if an agency official familiar with the agency records has determined that the agency does not retain the type of document that is requested.  *See American-Arab Anti-Discrimination Comm. v. DHS*, 516 F. Supp. 2d 83, 87–88 (D.D.C. 2007).  As Deputy Director for the Office of Privacy and Disclosure, Dawn Wiggins is familiar with the SSA's records.  *See* Wiggins Declaration ¶ 2.  In her declaration, she explains that "SSA does not maintain information on individuals who assist applicants in completing the Form SS-5 or employees' names who process the SS-5s."  Wiggins Declaration at ¶ 9.  That information sometimes may be determined by inspecting the Form SS-5, but all of the relevant Form SS-5's were made available to Plaintiff.

---

[4] As discussed below, the SSA released the Form SS-5's for the deceased individuals, but properly withheld the Form SS-5 of the living social-security number holder.  *See infra* at 7-10.

6

*Id.* ¶¶ 5, 9. Ms. Wiggins therefore has adequately "explain[ed] why a search would be futile and is unnecessary." *American-Arab Anti Discrimination Comm.*, 516 F. Supp. 2d at 88.

As to item 8, the SSA did not maintain a list of revision dates for the Form SS-5 prior to Plaintiff's FOIA request. *See* Wiggins Declaration ¶ 5. FOIA does not require the SSA to create a document in response to a request, where that document does not already exist. *See Zemansky v. EPA*, 676 F.2d 569, 574 (9th Cir. 1985). Nonetheless, an agency official created a list of revision dates in response to Plaintiff's request, and the SSA released that list to Plaintiff. *See* Wiggins Declaration ¶ 11.

As to items 9 and 10, the SSA also was not required to conduct a search. Those items constitute questions, not requests for documents. An agency is not required to answer questions posed as FOIA requests, or to create documents in response to FOIA requests. *See Zemansky*, 676 F.2d at 574 ("[T]he court correctly concluded that the EPA has no duty either to answer questions unrelated to document requests or to create documents."); *see also DiVaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978). The SSA could not "answer these questions with documents," and therefore "concluded that they do not constitute an FOIA request and did not warrant an agency response." Wiggins Declaration ¶ 10.

Because the SSA conducted an adequate search for responsive documents, it is entitled to summary judgment.

## II. THE SSA PROPERLY WITHHELD UNDER EXEMPTION 6 THE PERSONAL INFORMATION OF A LIVING SOCIAL-SECURITY NUMBER HOLDER.

The SSA withheld from disclosure only one requested document — the redacted Form SS-5 of a living social-security number holder.[5] Plaintiff requested the gender and zip code for

---

[5] The SSA released the Form SS-5's for the three deceased individuals, because it generally does "not consider the disclosure of information about a deceased person to be a clearly unwarranted invasion of that person's privacy." 20 C.F.R. § 401.190.

the applicant for that social-security number, as well as the date of application.  Because the SSA properly withheld that information, it is entitled to summary judgment.

"FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003).  As such, while the statute "affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure," *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005), Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  These exemptions are specified in 5 U.S.C. § 552(b).  The agency may meet its burden to justify nondisclosure based on exemptions by providing affidavits that provide an adequate description of each withheld document or portion thereof, and how each asserted exemption applies. *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 106. (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

In this case, the SSA properly withheld the Form SS-5 under exemption 6, which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Courts have recognized that social-security numbers fall within exemption 6. *See Sherman v. Dep't of the Army*, 244 F.3d 357, 364-65 (5th Cir. 2001); *Berger v. Internal Revenue Service*, 487 F. Supp. 2d 482 (D.N.J. 2007); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 86 n.13 (D.D.C. 2003).  And the SSA's FOIA regulations explicitly list social-security numbers as among the information it frequently withholds under exemption 6. *See* 20 C.F.R. § 402.100(c).  Indeed, this Court previously ruled against Plaintiff regarding a similar FOIA request, holding that she was

not entitled to the same Form SS-5 she has requested in this case. *See Taitz v. Obama*, No. 10-cv-151, slip op. at 4 (D.D.C. June 18, 2010).

Plaintiff cannot avoid exemption 6 by requesting a redacted Form SS-5 that still includes the social-security applicant's gender and zip code, as well as the date of application. "The balancing analysis for FOIA Exemption 6 requires that [the Court] first determine whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'" *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *National Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 874 (D.C. Cir. 1989)). If a substantial privacy interest is implicated, the Court "must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Horner*, 879 F.2d at 874. Under these standards, SSA properly withheld the gender, zip code, and date of application of the social-security number holder under exemption 6.

*First*, disclosure of this information would compromise a "substantial . . . privacy interest." *Multi Ag Media*, 515 F.3d at 1229. The "use of the word substantial in this context means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229-30. "[A] an individual's informational privacy interest in his or her [social-security number] is substantial." *Sherman*, 244 F.3d at 365. "[T]he concern is that the simultaneous disclosure of an individual's name and confidential [social-security number] exposes that individual to a heightened risk of identity theft and other forms of fraud." *Id.* That concern is not addressed by removing the name from a requested Form SS-5, while retaining the gender, zip code, and date of application. "[R]elease of information based on a specific number holder's identified [social-security number] could confirm the identity of the

9

number holder and/or give the requestor information that could lead to the possible identification or confirmation of the true number holder." Wiggins Declaration ¶ 8. Especially in light of the fact that Plaintiff's express purpose in requesting this information is to attempt to identify the holder of the social-security number, redaction of the name alone from the Form SS-5 would not address the substantial privacy interests implicated by the request. *See Schonberger v. Nat'l Transp. Safety Bd.*, 508 F. Supp. 941, 945 (D.D.C. 1981) ("[T]he material cannot be redacted in a manner that would protect the identity of the individual whose privacy interest is at stake.").

*Second*, the balance between the privacy interest and the public interest in disclosure tips sharply against disclosure. Congress did not intend the FOIA to facilitate "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 772-73 (1989) (quotations omitted). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Reporters Comm.*, 489 U.S. at 773). Plaintiff can identify no public interest served by disclosure of personal information related to a particular social-security number. Releasing that information would provide no insight into government function, or help Plaintiff to understand how the SSA fulfills its obligations. *See* Wiggins Declaration ¶ 7. In the absence of any identified public interest of the sort the FOIA was intended to serve, the Court's inquiry must end, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.,* 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives."). As courts have repeatedly recognized,

"something, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879; *see also Government Accountability Project v. U.S. Dept. of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (agency permitted to withhold e-mail addresses under exemption 6 because revealing the addresses would serve no public interest).

Because the agency properly withheld the Form SS-5 under exemption 6, it is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should grant the SSA's motion for summary judgment.

Dated: July 1, 2011                                Respectfully submitted,

TONY WEST
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

 */s/Patrick G. Nemeroff*
PATRICK G. NEMEROFF
CA Bar No. 268928
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-8727
Fax: (202) 305-8517
Email: patrick.g.nemeroff@usdoj.gov

Attorneys for Defendant