United States District Court
for the District of Columbia

| | |
|---|---|
| DR. ORLY TAITZ, ESQ, PRO SE ) | |
| ) | Civil Action No.: 1:11-CV-402 -RCL |
| Plaintiff, ) | The Honorable Royce C. Lamberth |
| v. ) | |
| ) | |
| MICHEAL J. ASTRUE, ) | |
| COMMISSIONER OF THE ) | |
| SOCIAL SECURITY ADMINISTRATION ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DECLARATION OF DAWN S. WIGGINS

I, Dawn S. Wiggins, Deputy Executive Director for the Office of Privacy and Disclosure in the Office of the General Counsel at the Social Security Administration (SSA), do hereby declare as follows:

1. I am employed at the Social Security Administration in Baltimore, Maryland. I have been the Deputy Director for the Office of Privacy and Disclosure since October 2008.

2. As part of my duties and responsibilities, I act as SSA's Freedom of Information Officer, and Privacy Act Officer. As such, I am familiar with SSA's records and systems that contain records.

3. By letter dated October 4, 2010, Orly Taitz made a Freedom of Information Act (FOIA) request to SSA for: 1) the dates that SSA revised the Form SS-5, Application for Social Security Number; and 2) the official blank SS-5 forms for 1958, 1959, 1976, and 1977. Ms. Taitz also requested information associated with Social Security Number (SSN) ▉ ▉-4425 as follows: 1) the zip code to which SSA mailed the original Social Security card; 2) the gender of the applicant; and 3) the date of the application. Finally, Ms. Taitz asked for copies of SS-5 applications for Margaret Bossing, Antoinette Demo, and Lillian Connors (Cleary) Appleby.

4. By letter dated January 1, 2011, Ms. Taitz sent an administrative appeal to SSA.

5. By letter dated March 2, 2011, SSA responded to Ms. Taitz's FOIA request. SSA released copies of the Form SS-5s for Margaret Bossing, Antoinette Demo, and Lillian Connors (Cleary) Appleby, because SSA's records indicate that these individuals are

1

deceased. In addition, SSA released a blank copy of Form SS-5 from 1976. The agency's publications management component searched its official history folder records but was unable to locate blank copies of the Form SS-5 for 1958, 1959, and 1977. A review of the SS-5 history folders by the publications staff revealed that September 1975 appeared to be the first date that Social Security became responsible for the Form SS-5. Prior to that date, the SS-5 was a Department of Treasury form. Although the publications management staff was able to identify the revision dates based on the history folder records, the history folder did not contain blank copies of the SS-5 for every revision date. Moreover, the agency did not maintain one document listing all of the revision dates. The agency searched for but was unable to locate blank copies of the Form SS-5 for 1958, 1959, and 1977.

6. In response to Ms. Taitz's request for information that related to SSN ▮▮▮-4425, SSA responded that it could not release this information, because the Privacy Act protects personally identifiable information contained in a system of records. See 5 U.S.C. § 552a. Therefore, an agency may not disclose an individual's records without the written consent of the individual. See 5 U.S.C. § 552a(b). However, the Privacy Act permits disclosure if the FOIA requires it. See 5 U.S.C. § 552a(b)(2). SSA maintains information regarding SSNs in its Privacy Act system of records entitled the Master Files of Social Security Number Holders and SSN Applications, System No. 60-0058. In order for SSA to retrieve information about the zip code to which the agency mailed the SSN, the gender of the applicant, and the date of application, the agency would have to use the individual's SSN to retrieve this information.

7. In this case, the agency asserted Exemption 6 of the FOIA to withhold this information. Under FOIA Exemption 6, an agency may withhold from release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The agency concluded that the personal information of the individual who holds a particular SSN falls within the category of files contemplated by Exemption 6. SSA's FOIA regulation at 20 C.F.R. § 402.100 specifically identifies SSNs as the kind of information that SSA withholds under Exemption 6 of the FOIA. Thus, the only determination that the agency needed to make was whether the public's interest in disclosure outweighed the individual's interests in privacy. "The public interest to be weighed against the privacy interest in this balancing test is 'the extent to which disclosure would serve the core purposes of the FOIA' by 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *United States Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994)). The agency concluded that there is no public interest in this information. Revealing information associated with a particular number holder's SSN does not shed light on the agency's performance of its statutory duties. Even if Ms. Taitz can articulate a public interest that release of this information would serve, an individual number holder's right to keep private information associated with his/her SSN outweighs the public's right to know this information. The agency has an obligation to keep information related to the SSN secure, because members of the public may use the information for identity theft and other nefarious purposes.

8. The agency also considered whether we could release information associated with an SSN without releasing the number holder's name. However, release of information based on a specific number holder's identified SSN could confirm the identity of the number holder and/or give the requestor information that could lead to the possible identification or confirmation of the true number holder. Again, the agency concluded that this would constitute an unwarranted invasion of personal privacy.

9. In her October 4, 2010, FOIA request, Ms. Taitz also asked the agency to provide the names of persons who assisted applicants for Social Security cards to complete the SS-5 application. SSA does not maintain information on individuals who assist applicants in completing the Form SS-5 or employees' names who process the SS-5s. However, there may be some instances in which an individual who assisted an applicant in completing the SS-5 also signed the form for the applicant along with his own name. In that case, the reader may be able to determine the individual's name by looking at the original SS-5.

10. Finally, in her October 4, 2010, FOIA request, Ms. Taitz also asked a number of questions that relate to what she claims to be discrepancies on Stanley Ann Dunham's and Shirley Dunham's SS-5s. For instance, she asks "How could Stanley Ann Dunham fill out in 1959 a form, that would not exist until 1965." Because the agency cannot answer these questions with documents, we concluded that they do not constitute an FOIA request and did not warrant an agency response.

11. By letter dated June 27, 2011, SSA released two additional documents to Ms. Taitz. First, the agency disclosed a list of Form SS-5 revisions dates. The agency had created that list in response to Ms. Taitz's FOIA request, though FOIA did not require it to do so. Also, the agency provided another copy of Stanley Ann Dunham's Form SS-5, which shows a clearer revision date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30th, 2011 in Baltimore Maryland.

Dawn S. Wiggins
Deputy Director of the
    Office of Privacy and Disclosure
Social Security Administration

3