UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORLY TAITZ, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 11-402 (RCL) |
| MICHAEL ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

Before the Court is defendant's Motion for Summary Judgment [21]. Upon consideration of defendant's motion, plaintiff's opposition [31], the reply thereto [32], the entire record herein, and the applicable law, the Court will grant summary judgment in defendant's favor for the reasons set forth below.

**I.    BACKGROUND**

Ever persistent, plaintiff has once again come before this Court in an effort to uncover "the biggest cover up in the history of this nation." Pl.'s Opp'n to Mot. for Summ. J. 20 [31]. She believes that the President is using a "fraudulently obtained" social security number and that the Social Security Administration—among other agencies—is involved in a scheme to "cover[] up social security fraud, IRS fraud, elections fraud and possibly treason" committed by the President. *Id.* at 5–6, 13. As her numerous filings with the Court demonstrate, plaintiff will stop at nothing to get to the bottom of this alleged conspiracy. Unfortunately for plaintiff, today is not her lucky day.

1

In her latest litigation before this Court, plaintiff has sued Michael Astrue, Commissioner of the Social Security Administration ("SSA"), under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for information relating to individuals' social security numbers. On October 4, 2010, plaintiff submitted a FOIA request to the SSA seeking various records and posing questions relating to the social security numbers of several individuals. Def.'s Mem. in Supp. of Mot. for Summ. J. 2 [21-2] ("Def.'s Mem. in Supp."). The SSA responded to her request on March 2, 2011. *See* Mot. for Summ. J. Ex. C [21-6] ("March Response"). The record demonstrates that the SSA conducted a thorough search in response to plaintiff's request, disclosing all responsive documents except for the "redacted Form SS-5 for the living individual who holds the social-security number xxx-xx-4425." Def.'s Mem. in Supp. 2 [21-2].

The SSA withheld the requested Form SS-5[1] under FOIA Exemption 6, which protects records from release where disclosure "would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). In its response to plaintiff's request, the SSA explained that the Privacy Act of 1974, 5 U.S.C. § 552a, protects the personal information of social security number holders. *See* March Response 2 [21-6]. The SSA releases such information to the public only with the holder's consent—which the SSA did not have here—or if FOIA requires disclosure. The SSA determined that Exemption 6 applied to the Form SS-5 because the information therein could be used to identify the social security number holder and because plaintiff had identified no public interest that would be served by disclosure. *See id.*

Having filed an administrative appeal, plaintiff filed a complaint and an amended complaint asking this Court to order defendant to release various documents. Defendant

---

[1] Form SS-5 is the form through which an individual applies for a social security card.

answered the amended complaint and subsequently moved for summary judgment. Defendant argues that the SSA conducted an adequate search for responsive documents and produced all such documents that are not exempt from release under FOIA. In her opposition to defendant's summary judgment motion, plaintiff does not dispute that the SSA conducted an adequate search for responsive documents and disclosed all such documents except for one—the requested Form SS-5. She challenges only the SSA's withholding of that form. *See* Pl.'s Opp'n to Mot. for Summ. J. 5 [31]. Thus, the only question before this Court in determining whether defendant is entitled to summary judgment is whether the SSA properly withheld the Form SS-5 under FOIA Exemption 6.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). FOIA actions are typically resolved on summary judgment. *See Reliant Energy Power Generation, Inc. v. FERC.*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). To establish that it is entitled to summary judgment in a FOIA case, an agency must demonstrate that it has conducted an adequate search for the requested documents and that any withheld documents fall into one of FOIA's statutory exemptions. *Id.* In determining whether the defendant agency has met its burden, "the underlying facts are viewed in the light most favorable to the [FOIA] requester." *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

A court reviews an agency's response to a FOIA request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). Affidavits that the agency submits to demonstrate the adequacy of its response are entitled to a presumption of good faith. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771

(D.C. Cir. 1981). The reviewing court "is not obligated to conduct an *in camera* review of the documents withheld [under a FOIA exemption]; the decision to do so is discretionary." *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1985). The court may grant summary judgment in favor of the agency "simply on the basis of [its] affidavits, if they 'contain information of reasonable detail, sufficient to place the documents within the exemption category, and if the information is not challenged by contrary evidence in the record or evidence of agency bad faith.'" *Id.* (quoting *Lesar v. U.S. Dept. of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980)).

### III. DISCUSSION

FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether an agency has properly withheld a record under Exemption 6, a court must first determine whether disclosure would compromise a substantial privacy interest. *Nat'l Ass'n of Retired Fed. Emps. v. Homer*, 879 F.2d 873, 874 (D.C. Cir. 1989). The court must then balance any such privacy interest in nondisclosure "against the public interest in the release of the records" to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy. *Id.*

In a previous case in which plaintiff requested the same Form SS-5 that she has requested here, this Court held that social security numbers are exempt from disclosure under FOIA Exemption 6. *See Taitz v. Obama*, 754 F. Supp. 2d 57, 60 (D.D.C. 2010). That holding was not surprising, as it is consistent with other courts' recognition that Exemption 6 protects social security numbers. *See, e.g.*, *Smith v. Dept. of Labor*, No. 10-1253, 2011 WL 3099703, at *6 (D.D.C. July 26, 2011); *Prison Legal News v. Lappin*, No. 05-1812, 2011 WL 766559, at *6 (D.D.C. Feb. 25, 2011); *Coleman v. Lappin*, 680 F. Supp. 2d 192, 197 (D.D.C. 2010). It is also

consistent with the SSA's regulations, which list social security numbers as "information that [the SSA] frequently withhold[s] under Exemption 6." 20 C.F.R. § 420.100(c).

Here, the SSA withheld from disclosure only one document requested by plaintiff—the redacted Form SS-5 of the living individual who holds social security number xxx-xx-4425.[2] In requesting that form, plaintiff asked for the date of the application as well as the zip code and gender of the applicant. *See* Mot. for Summ. J. Ex. A [21-4]. She did not seek the name of the applicant. *See id.* Because the redacted Form SS-5 contains identifying information associated with a living individual's social security number, its disclosure would compromise a substantial privacy interest. *See Sherman v. U.S. Dept. of Army*, 244 F.3d 357, 365 (5th Cir. 2001) ("[A]n individual's informational privacy interest in his or her [social security number] is substantial."). Redacting the individual's name from the Form SS-5—while still retaining the social security number, the date of the application, and the applicant's zip code and gender—does not diminish the privacy interest. Dawn Wiggins, Deputy Executive Director for the Office of Privacy and Disclosure in the SSA's Office of General Counsel, states in her affidavit on behalf of the SSA:

> The agency also considered whether we could release information associated with a [social security number] without releasing the number holder's name. However, *release of information based on a specific number holder's identified [social security number] could confirm the identity of the number holder and/or give the requestor information that could lead to the possible identification or confirmation of the true number holder.* Again, the agency concluded that this would constitute an unwarranted invasion of personal privacy.

Mot. for Summ. J. Ex. E [21-8] (emphasis added). Indeed, plaintiff makes no secret of her intention to use the redacted Form SS-5 to identify the holder of social security number xxx-xx-4425—or, as plaintiff puts it, to confirm her suspicion that the President is fraudulently using

---

[2] The SSA disclosed to plaintiff three Form SS-5's belonging to deceased individuals because it generally "does not consider the disclosure of information about a deceased person to be a clearly unwarranted invasion of that person's privacy." 20 C.F.R. § 401.190.

that number.[3]

Plaintiff's allegation that the requested Form SS-5 is associated with a public official does not diminish the privacy interest at stake here. Even if plaintiff's allegation were true, an individual's status as a public official does not, as plaintiff contends, "make exemption 6 irrelevant to him and his vital records." Pl.'s Opp'n to Mot. for Summ. J. 18 [31]. "Individuals do not waive all privacy interests . . . simply by taking an oath of public office." *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001); *see also Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978) (explaining that public servants are not "stripped of every vestige of personal privacy," particularly where the release of identifying information could "subject them to harassment and annoyance in the conduct of their official duties"); *Kidd v. Dept. of Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) (upholding the redaction of a public official's personal information under FOIA Exemption 6 where such information had "little bearing on the public's understanding of the way in which the Department of Justice . . . conducts its affairs"). To be sure, a public official's "privacy interests may be diminished in cases where information sought under FOIA would likely disclose 'official misconduct.'" *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (quoting *Lissner*, 241 F.3d at 1223–24). But plaintiff's unsubstantiated allegations, without more, do not persuade the Court that the requested information "would likely disclose" official misconduct, *id.*, and thus do not affect the calculus here.

On the other side of the ledger, plaintiff has identified no legitimate public interest that would be served by disclosure of the requested Form SS-5. In determining whether the

---

[3] Plaintiff's argument that redacted Form SS-5's are "routinely provided to law enforcement," Pl.'s Opp'n to Mot. for Summ. J. 15 [31], is irrelevant. Both the Privacy Act and SSA regulations permit the SSA to disclose records to law enforcement in specific circumstances. *See* 5 U.S.C. § 552a(b)(7); 20 C.F.R. § 401.155. Clearly, those provisions are inapplicable here.

disclosure of government records would result in a clearly unwarranted invasion of privacy, the relevant public interest to be weighed against the privacy interest is the extent to which disclosure would contribute to "public understanding of the operations or activities of the government." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994)) (internal quotation marks omitted). "Thus, unless a FOIA request advances the citizens' right to be informed about what the government is up to, no relevant public interest is at issue." *Id.* at 34 (quoting *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)) (internal quotation marks omitted). The disclosure of an individual's Form SS-5 would provide absolutely no insight into the SSA's operations or activities. And plaintiff—for all her allegations—has produced no "evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Her vehement allegations of fraud consist of mere "bare suspicion[s]" and thus fail to satisfy the public interest standard required under FOIA. *Id.*[4]

---

[4] Plaintiff submits the Selective Service registration acknowledgment form associated with security number xxx-xx-4425, Pl.'s Opp'n to Mot. for Summ. J. Ex. 1 [31], which apparently is "readily available on the world wide web." Pl.'s Am. Compl. 3 [3]. She argues that this form establishes that the President is fraudulently using social security number xxx-xx-4425, Pl.'s Opp'n to Mot. for Summ. J. 13 [31], and that the Selective Service and the SSA are "engaged in a cover up" of his fraud. Pl.'s Am. Compl. 3 [3]. The Selective Service does not release registration acknowledgment forms to the public; only a registrant himself can request proof of his registration. *See* Registration Information, http://www.sss.gov/ack.htm. The Court can only conclude that plaintiff has submitted a form that some individual obtained through a false request and subsequently posted online. Plaintiff also submits a "verification results" page from the Social Security Number Verification System ("SSNVS") indicating that social security number xxx-xx-4425 is "not in file (never issued)." Pl.'s Opp'n to Mot. for Summ. J. Ex. 2 [31]. She argues that this page is further evidence that the SSA is covering up the President's use of social security number xxx-xx-4425. The SSA uses the SSNVS to provide employers with a means of verifying the names and social security numbers of employees. *See* SSNVS Handbook, http://www.ssa.gov/employer/ssnvshandbk/ssnvsHandbook.pdf. "Anyone who knowingly and willfully uses SSNVS to request or obtain information from SSA under false pretenses violates


Disclosure of the requested Form SS-5 would implicate a substantial privacy interest while serving no public interest cognizable under FOIA. Because disclosure would "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), the SSA properly withheld the Form SS-5 under Exemption 6. Plaintiff challenges no other aspect of the SSA's response to her FOIA request. Accordingly, the Court finds that defendant is entitled to summary judgment in this case.

## IV. CONCLUSION

For the reasons discussed above, defendant's Motion for Summary Judgment [21] will be granted. A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 30, 2011.

---

Federal law and may be punished by a fine, imprisonment or both." *Id.* at 5. As with the registration acknowledgement form discussed above, the Court can only conclude that plaintiff has submitted a page that some individual obtained under false pretenses—that is, by representing himself as the President's employer. The Court notes that both documents submitted by plaintiff are incomplete; the address on the registration acknowledgment form and the employer identification number on the SSNVS page have been blacked out, further confirming the documents' fraudulent origins. For all of these reasons, the Court will disregard both documents as well as any arguments made in reliance on them.